IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YSELA A. LOPEZ, | No. CIV S-05-2247-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE,[1] Commissioner of Social Security, | |
| Defendant. | |
| _____/ | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the consent of the parties, this case is before the undersigned for final decision on plaintiff's motion for summary judgment (Doc. 11) and defendant's cross-motion for summary judgment (Doc. 12).

///

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Michael J. Astrue is substituted for his predecessor. The Clerk of the Court is directed to update the docket to reflect the above caption.

# I.  BACKGROUND

Plaintiff applied for disability insurance benefits on February 3, 2003, based on disability.  In her application, plaintiff claims that her impairment began on August 17, 2000.  In her brief, plaintiff claims her disability consists of "(1) Anemia; (2) Hypertension; (3) Depression; (4) Hypothyroidism; (5) Diabetes; (6) Obesity; (7) Kyphosis of the thoracic spine; (8) Arthritis in the right hip; and (9) Degenerative disc disease of the lumbar spine."  Plaintiff is a United States citizen born July 26, 1951, with a tenth-grade education.

### A.  Summary of the Evidence

In August 2000, plaintiff injured her thoracic spine as a result of an accident at work.  She was treated by K. Paige Griffin, a nurse practitioner, and Richard W. Martin, M.D, and limited to lifting no more than 10 pounds, no prolonged standing or walking, and no repetitive bending or stooping.  Plaintiff was evaluated by orthopedic specialist James M. Talcott, M.D., in early 2001.  At that time, MRI scans revealed lumbar degenerative disc disease and thoracic disc bulges, among other abnormalities.  Dr. Talcott recommended a facet joint injection, but that was not performed because plaintiff was not in significant pain when not doing heavy work.  In July 2001, Dr. Martin noted tenderness in the thoracic soft tissued, obesity, and no nerve compression and stated that plaintiff's disability was "slight pain made moderate on heavy work with a preclusion from repetitive forward bending or repetitive heavy lifting."  Dr. Martin did not recommend surgical intervention or physical therapy.

By September 2001, plaintiff was experiencing depression.  In September 2001, Dr. Griffin referred plaintiff to Margaret Lee, a licensed clinical social worker, for depression.  Ms. Lee worked with plaintiff from September through December 2001 and diagnosed major depression resulting from her back problems and stated that plaintiff could function mentally if her physical problems were resolved.  In October 2001, plaintiff was evaluated by Judith Keins, M.D., a psychiatrist, who diagnosed dysthymia and borderline personality disorder caused by plaintiff's "horrendous developmental history."  Dr. Keins further opined that the structure of

work was essential to her recovery and urged vocational rehabilitation so plaintiff could return to work. Dr. Keins did not think additional mental health treatment was necessary. Plaintiff was evaluated by psychiatrist Ann E. Allen, M.D., in March 2002, who diagnosed depressive disorder as a result of chronic pain and an inability to return to her former work. Dr. Allen believed that plaintiff could perform her past work.

Plaintiff also reported back to Dr. Martin in March 2002, who noted that plaintiff reported a slip which she said made her thoracic pain worse and caused her to stop vocational rehabilitation. No new findings on physical examination were reported. Dr. Martin opined that vocational rehabilitation was not going to be successful because it was not working out well for plaintiff. Plaintiff saw John F. Pletz, M.D., also in March 2002 and again in May 2002, who diagnosed lumbar disc injury, thoracic sprain, and situational depression. Dr. Pletz noted a history of diabetes without complication or use of assistive devices.

In March 2003, at the request of the Social Security Administration, plaintiff was evaluated by psychologist Wendy McCray, Ph.D., who diagnosed adjustment disorder with a depressed mood. Dr. McCray did not think plaintiff was impaired. Also in March 2003, plaintiff was evaluated by physician Jaskaran Momi, M.D., who performed a physical examination at the request of the Social Security Administration. Dr. Momi diagnosed low back pain with minimal limitation on bending, possible degenerative joint disease in early stage, diabetes millitus with no complications, and morbid obesity and opined that plaintiff was limited to sedentary work. In April and August 2003, plaintiff's medical records were evaluated by agency physicians who opined that plaintiff was capable of light work and that she had depression which resulted in only mild limitations.

In September 2003, plaintiff's treating physician, Alan Charles Werblin, M.D., diagnosed plaintiff with back pain, diabetes, and asthma. Dr. Werblin opined that plaintiff's pain and other symptoms are severe enough to interfere with attention and concentration needed for even simple tasks. He also reported that plaintiff experienced a slip which exacerbated her back

pain, but that she was improving two weeks later.  Dr. Werblin provided a questionnaire in May 2004 concerning plaintiff's diabetes and opined that it was poorly controlled and that plaintiff suffered from fatigue, difficulty walking, bladder infection, general malaise, muscle weakness, kidney problems, hot flashes, abdominal pain, frequency of urination, and difficulty thinking.

**B.  Procedural History**

Plaintiff's claim was initially denied.  Following denial of her request for reconsideration, plaintiff requested an administrative hearing, which was held on May 19, 2004, before Administrative Law Judge ("ALJ") Richard P. Laverdure.

In his October 29, 2004, decision, the ALJ made the following findings:

1. Claimant has not engaged in any substantial gainful activity at any time material to this decision;

2. Claimant's impairments, which are considered to be severe . . . are as follows: diabetes mellitus, obesity, L5-S1 bulge, and multilevel thoracic spine bulges; she has depression, which is not severe;

3. Claimant's impairments do not meet or equal in severity the appropriate medical findings contained in [the Listing of Impairments];

4. Claimant's allegations are not totally credible for the reasons set forth in the body of the decision;

5. Claimant has the residual functional capacity as set forth in the body of the decision;[2]

6. Claimant can not perform her past relevant work as a psychiatric aide;

///

---

[2]  As to plaintiff's residual functional capacity, the ALJ stated:

Having considered all of the evidence of record, including the testimony at the hearing, I find that claimant has a residual functional capacity to perform work that does not require: exertion above the light level; lifting and carrying more than 10 pounds; exposure to heights; or balancing, stooping, kneeling, crouching, crawling, or use of ramps and stairs more than occasionally.  In addition, claimant needs rotations between sitting/standing/walking on an hourly basis and unscheduled hourly access to a restroom for not more than 5 minutes at a time.  Finally, she can stay on task at required pace 90% of the time (i.e., she suffers from decreased persistence and pace up to 10% of the time due to pain).

4

      7.    Claimant is 53 years old; she has a limited education and semi-skilled past work experience;

      8.    Claimant has no skills or semi-skills transferable to work within her residual functional capacity;

      9.    Based upon claimant's residual functional capacity and vocational factors, there are jobs existing in significant numbers that she can perform; this finding is based upon the following: vocational expert evidence . . . and medical vocational rule 202.11; and

     10.    Claimant has not been under a disability . . . at any time relevant to this decision.

Based on these findings, the ALJ concluded that plaintiff was not disabled and, therefore, not entitled to benefits. After the Appeals Council declined review on September 13, 2005, this appeal followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation,

one of which supports the Commissioner's decision, the decision must be affirmed, see <u>Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III. DISCUSSION

In her motion for summary judgment, plaintiff argues that: (1) the ALJ failed to properly evaluate the medical opinions; (2) the ALJ erred in finding her depression was not a severe impairment; (3) the ALJ failed to set forth explicit reasons for rejecting her testimony as not credible; (4) the ALJ failed to apply Social Security Ruling ("SSR") 02-1p in analyzing her obesity; (5) the ALJ failed to articulate sufficient reasons for rejecting the lay testimony of her daughter; and (6) the ALJ failed to propound appropriate hypothetical questions to the vocational expert.

### A.  **Medical Opinions**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See <u>Lester v. Chater</u>, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See <u>id.</u>; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996); <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and

convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

Plaintiff argues that the ALJ failed to properly evaluate the medical opinions of Drs. Werblin and Momi. As to Dr. Werblin, the ALJ stated:

> I reject the opinion of Dr. Werblin, a treating physician, that claimant is unable to sustain an 8-hour workday. The restrictions he imposes are so extreme as to be not credible. For example, he opined that claimant needed a cane or assistive device when engaging in occasional walking/standing and needed to elevate her legs 50% of the workday if she held a sedentary job. Further there are restrictions that are not supported by objective medical evidence. For example, he opined that claimant had limitations with reaching, handling, and fingering but gave no explanation other than "CTS" for his finding. Dr. Werblin's opinion is contrary to all of the medical opinions of record, including Dr. Momi's. Also, Dr. Werblin's report that claimant's diabetes has been poorly controlled with his listed symptoms and limitations since 1998 is inconsistent with Dr. Momi's report, in 2003, that there had been no complications. Dr. Momi's report, in that regard, is consistent with all prior reports. Dr. Werblin's opinion that claimant is unable to sustain an

> 8-hour workday is not supported by his own treatment notes, which do show some treatment of claimant for elevated sugar levels in 2003, and early 2004, but mostly routine care.

As to Dr. Momi, the ALJ stated:

> I accord little weight to the opinion of Dr. Momi that claimant is limited to standing or walking no more than 2 hours in an 8-hour working day. It is not supported by his objective physical findings (he found full range of motion and no neurological deficits) and is contrary to the other evidence of record.

Plaintiff argues that the ALJ erred in "not providing sufficient reasons to discount the medical opinion of Dr. Alan Werblin." In support of this argument, plaintiff cites Lester v. Chater, 69 F.3d 1453 (9th Cir. 1995), for the proposition that the ALJ must give "good reasons" to explain the weight given to medical opinions. Thus, it appears that plaintiff contends that the reasons the ALJ gave for rejecting a portion of Dr. Werblin's opinion were not a appropriate ones. The court does not agree for the simple reason that it is appropriate to reject a medical opinion because it not supported by the clinical findings, see Meanel, 172 F.3d at 1113. This is one of the reasons offered by the ALJ in this case for rejecting parts of Dr. Werblin's opinion.

As to Dr. Momi, who conducted an examination, plaintiff argues that the ALJ erred because he did not state clear and convincing reasons. However, because Dr. Momi's opinion as to plaintiff's stand/walk limitation is controverted by other medical evidence in the record, the ALJ is only required to state specific and legitimate reasons, which he did.[3] In any event, the ALJ stated that plaintiff's residual functional capacity was reduced by the need for "rotations between sitting/standing/walking on an hourly basis." Thus, it appears that the ALJ ultimately included a stand/walk limitation greater than the one opined by Dr. Momi.

/ / /

/ / /

---

[3] Dr. Momi's limitation is contradicted by Dr. Allen's assessment that plaintiff could perform her past work as well as the assessments of the agency reviewing doctors who opined that plaintiff was capable of light work.

8

### B. Plaintiff's Depression

In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923. An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. See Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient. See id.

Plaintiff argues that the ALJ erred in finding that her depression was not a severe impairment. Plaintiff points to the opinions of Drs. Keins, Allen, Pletz, McCray, Werblin, and Zilberg, as well as evidence from Ms. Lee and Ms. Griffin and states that, "[f]or the ALJ to find that the plaintiff's depression is non-severe is simply to ignore [this] overwhelming medical evidence. . . ."[4]

///

///

///

---

[4] Except as to Drs. Werblin and Momi, discussed above in section III.A. of this opinion, plaintiff does not challenge the ALJ's analysis with respect to the weight given these doctors' opinions.

9

For plaintiff's depression to be considered non-severe, the ALJ must conclude that it had no more than a minimal effect on plaintiff's ability to work and this conclusion must be based on substantial evidence. As to plaintiff's depression, the ALJ stated:

> I find that claimant has had no significant mental limitations for any 12-month period. This is based upon the opinion of Dr. Keins that claimant did not need mental health treatment, the opinion of Dr. McCray that claimant was essentially unimpaired, and the opinion of the state agency physicians that claimant had no severe impairment. It is mostly consistent with the opinion of Dr. Allen that claimant had some slight to moderate mental limits but none that would interfere with even past relevant work.

In addition, Dr. McCray did not think plaintiff was impaired due to mental problems. As to Dr. Pletz, the record does not reflect that he performed any kind of mental status evaluation. Therefore, his diagnosis of situational depression must have been based on plaintiff's subjective complaints. Similarly, Dr. Werblin does not appear to have treated plaintiff for depression. Therefore, to the extent he opines that plaintiff's ability to maintain a normal workday, his opinion is not related to plaintiff's depression but to her physical problems. As to Dr. Zilberg, who performed various personality tests on plaintiff, he concluded that plaintiff "is experiencing at most a very mild level of overall dissatisfaction with her life circumstances and/or with herself. . . ."

Based on the foregoing, while it is clear that plaintiff has some form of depression, it is also clear that it was not severe enough to more than minimally impact her ability to work. Therefore, the ALJ did not err in his assessment of plaintiff's depression.

### C. Plaintiff's Credibility

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible

and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See id. at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

As to plaintiff's credibility, the ALJ summarized her testimony as follows:

> Claimant testified at the hearing that she suffers from pain as the result of her work injury. She testified that on a scale of 1 to 10, her pain is usually at a 9. She testified that she takes Vicodin when her pain reaches a 10, and that occurs when she engages in prolonged standing or walking. She testified that she experiences back pain after walking 10 to 15 minutes. She said that she can sit about 30 minutes and needs to change positions throughout the day. She testified that she had gained over 100 pounds since her accident and currently weighs 320 pounds. She testified that she needs help with grooming, dressing, and performing household tasks. She testified that she had difficulty with vocational rehabilitation because of pain. She testified that she is most comfortable sitting forward with her arms resting on a table. She testified that she is also a diabetic and, as a result, suffers from fatigue and requires frequent use of the bathroom. She testified that her urination problem is a new problem. She testified that the more soda she drinks during the day, the more she visits the restroom. She testified that stress adversely affects her diabetes.

///

///

Plaintiff does not challenge the accuracy of this summary.  The ALJ then offered his reasons for rejecting this testimony as not totally credible:

> I find the claimant's testimony as to her impairments and their effect on her ability to work to be not fully credible.  The medical evidence does not support her.  It does not establish that she is as limited as she claims.  Further, there are several inconsistencies in the record.  For example, she testified that she was limited in her ability to do household chores but Ms. Lee's notes show that she was shampooing a rug with her husband in October 2001.  She testified that she had gained 100 pounds since her injury in August 2000, but notes indicate that as early as April 2001, she weighed 315 pounds.  It is not likely that she gained 100 pounds in 8 months.  It also appears that claimant has been obese all of her adult life and that her obesity is not primarily related to pain and musculoskeletal limitations.  She indicated that her urinary frequency problem is new and due to increased problems with her diabetes but she previously reported her frequency problem . . . in July 2002.  Moreover, she admits that the less soda she drinks, the less frequently she would have to urinate.  The amount of soda she drinks is certainly within her control.  She testified that she suffers from fatigue due to diabetes, but the record does not reflect that she raised serious fatigue concerns with her physicians.  Also, she has managed her pain without using narcotic pain medication on any regular basis.

Plaintiff argues that the ALJ failed to explicitly set forth the medical evidence supporting his finding.   Plaintiff does not challenge the ALJ's credibility finding in any other way.

As to plaintiff's limited argument that the ALJ failed to explicitly set forth the medical evidence supporting the finding, the court does not agree.  As clearly reflected in the ALJ's discussion, the ALJ cited Ms. Lee's notes which contradict plaintiff's testimony.  The ALJ also referenced medical records as to plaintiff's weight in April 2001.  Additionally, the ALJ cited medical records indicating that plaintiff had reported urinary frequency problems as early as July 2002, despite her claim at the hearing that this problem was new.

To the extent plaintiff is arguing that the ALJ erred by not making specific citations to the exhibits in the record, the court also does not agree.  The case cited by plaintiff does not stand for this proposition.  In <u>Rollins v. Massanari</u>, 261 F.3d 853 (9th Cir. 2001), the court held that the ALJ must be sufficiently specific to allow a reviewing court to determine whether the ALJ relied on appropriate grounds.  This does not require specific citations to the

exhibits. Given the ALJ's extensive summary of the medical evidence, this court is sufficiently aware of the reasons offered by the ALJ to determine whether they are appropriate. In any event, the plaintiff does not argue that the reasons were inappropriate. Rather, she argues only that the ALJ failed to explicitly cite to the record. There is no such requirement.

### D. Plaintiff's Obesity

In 1999, obesity was removed from the Listing of Impairments. Obesity may still enter into a multiple impairment analysis, but "only by dint of its impact upon the claimant's musculoskeletal, respiratory, or cardiovascular system." Celaya v. Halter, 332 F.3d 1177, 1181 n.1 (9th Cir. 2003). Thus, as part of his duty to develop the record, the ALJ is required to consider obesity in a multiple impairment analysis, but only where it is "clear from the record that [the plaintiff's] obesity . . . could exacerbate her reported illnesses." Id. at 1182; see also Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (distinguishing Celaya and concluding that a multiple impairment analysis is not required where "the medical record is silent as to whether and how claimant's obesity might have exacerbated her condition" and "the claimant did not present any testimony or other evidence . . . that her obesity impaired her ability to work"). Where a multiple impairment analysis is not required, the ALJ properly considers obesity by acknowledging the plaintiff's weight in making determinations throughout the sequential analysis. See Burch, 400 F.3d at 684.

Plaintiff argues that the ALJ failed to apply SSR 02-1p. Specifically, plaintiff asserts that the ALJ did not consider the impact of her obesity on her ability to work by improperly dismissing her obesity and improperly rejecting her testimony regarding weight gain as not credible. Plaintiff also asserts that the ALJ failed to sufficiently articulate reasons supporting his obesity conclusion, as required by the ruling.

Defendant argues that the ALJ satisfied his obligation regarding plaintiff's obesity because he considered it and concluded that it is "not primarily related to pain and musculoskeletal limitations." This, however, does not quite address the issue because, even

though plaintiff's obesity may not have been caused by or be related to her work injury because she was obese all her life, that is not to say that her obesity could not exacerbate her condition. As the court noted in Burch – which is cited by defendant – the inquiry is whether the plaintiff's obesity increases the severity or functional limitations of other impairments. See Burch, 400 F.3d at 681.

As to this inquiry, plaintiff in her brief alleges that obesity is one of her physical impairments. However, as discussed above, obesity by itself is no longer a recognized impairment. Plaintiff does not allege in her motion for summary judgment that her obesity exacerbated her back problems. While obesity may make diabetes worse, the medical evidence in this case shows that plaintiff's diabetes was free of complications. Therefore, her obesity does not seem to have exacerbated her diabetes. Moreover, in an Adult Disability Report submitted with her application for benefits, plaintiff does not allege that obesity exacerbated her other problems. In fact, she does not mention obesity at all. Similarly, in questionnaires about her daily activities and pain, plaintiff does not indicate that obesity is any kind of problem. Finally, while plaintiff testified at the hearing that her weight gain was caused by her work injury and job loss, she never testified that her obesity exacerbated her other health problems or that it added to her limitations. Rather, it is clear from her testimony that she claims her limitations are due primarily to back pain resulting from the work injury and secondarily to depression.

Because plaintiff has not made obesity a relevant issue by alleging that it exacerbates her other problems or adds to her limitations, the ALJ properly considered obesity by acknowledging plaintiff's weight in his disability analysis. See id. at 684.

### E. Lay Witness Testimony

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent

evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919.

As to plaintiff's daughter's testimony, the ALJ provided the following summary, which plaintiff does not challenge:

> Claimant's daughter also testified at the hearing. She said that she sees her mother every other day. She testified that her mother's condition has deteriorated over the last 2 to 3 years. She testified that her mother no longer shops with her because it is too painful for her. She said that her mother has difficulty traveling in an automobile. She said that she has observed her mother to be in pain when she is in one position for a prolonged period of time and standing for more than 20 minutes. She said that her mother can no longer babysit or lift her grandchildren. She testified that they used to go to the movies but have not gone to the movies in the last 4 to 5 years.

The ALJ then stated:

> With regard to claimant's daughter's testimony, I find it not fully credible. It is not fully consistent with responses she provided in a daily activities questionnaire dated February 2003. At that time, she stated that claimant goes to movies, 3 to 4 times a month, and shops for her grandkids.

Plaintiff argues that the ALJ failed to articulate sufficient reasons for rejecting the hearing testimony of her daughter.

In Dodrill, the ALJ had discounted several different lay witnesses' testimony because he believed they were all merely repeating the claimant's allegations. See id. at 918-19. The court held that, because not all of the witnesses had merely repeated the claimant's story, the ALJ failed to give reasons germane to each witness. See id. Thus, the phrase "germane to each witness" merely means that the ALJ must give an explanation specific to each witness whose lay testimony is rejected. It does not impose any evidentiary standard. Here, the ALJ clearly gave a reason germane to plaintiff's daughter – the ALJ believed that the hearing testimony was inconsistent with prior statements and, therefore, not credible.

///

Plaintiff contends that this was not a valid reason because the prior statements were over a year old and, at the hearing, plaintiff's daughter testified that plaintiff's condition had worsened over time. Plaintiff asserts that this explains the difference. While plaintiff may be correct that this explains the discrepancy, another reasonable conclusion is that plaintiff's daughter was not entirely truthful at the hearing. For example, plaintiff's daughter testified at the hearing that she and her mother had not gone to the movies in the past four or five years. However, in the questionnaire completed only 15 months before her hearing testimony, plaintiff's daughter stated that, at that time, she and her mother went to the movies several times per month. This inconsistency cannot be explained by deterioration of plaintiff's condition and can be explained by untruthfulness.[5]

### F.   Hypothetical Questions

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

Plaintiff argues that the hypothetical questions propounded by the ALJ to the vocational expert failed to take into account all of her exertional and non-exertional limitations. Specifically, plaintiff asserts that the hypothetical should have included a 2-hour standing/walking restriction and her depression. For all of the reasons discussed above with

---

[5] The court does not mean to imply any finding that plaintiff's daughter was, in fact, lying. It is merely a reasonable possibility given the facts of this case.

respect to the medical opinions concerning plaintiff's physical condition and depression, the court disagrees and concludes that the ALJ's hypothetical to the vocational expert accurately described plaintiff's abilities. In addition, the ALJ adopted a more limiting restriction in his residual functional capacity assessment by concluding that plaintiff needs to rotate between sitting/standing/walking on an hourly basis.

## IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is denied;
2. Defendant's cross-motion for summary judgment is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: February 16, 2007.

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE